NEW YORK AND NEW ENGLAND RAILROAD COMPANY
*vs.* JOSEPH J. FEELY.

Suffolk.    January 21, 1895. — March 1, 1895.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Railroad — Action to recover Fare of Passenger — Evidence — Waiver
— Principal and Agent.*

In an action to recover a passenger fare a railroad corporation may put in evidence its printed schedule of trains to show that a certain train did not stop regularly at a certain station.

Tendering a coupon from a season ticket not good for his ride does not relieve a passenger from paying his fare in cash, although on previous occasions such coupons have been accepted for such rides, and although he may have been told by brakemen or gatemen that the train was a train for his station, or, upon a former occasion, that his ticket was good for passage by that train.

CONTRACT, to recover sixty-nine cents, the amount of a fare on the plaintiff's railroad between Boston and Franklin. Trial in the Superior Court, without a jury, before *Bond*, J., who allowed a bill of exceptions, in substance as follows.

Edwin G. Cowell testified that he was a conductor in the plaintiff's employ; and that he was the conductor on the train leaving Boston at six o'clock in the evening of May 26, 1893, and had been running on that train about three or four days. A printed schedule of trains on the plaintiff's railroad was at this point offered and admitted in evidence, against the defendant's objection; and the defendant excepted. It appeared from this schedule that the first stop made by the train in question after leaving Boston was at Franklin, where it arrived at 6.42 P. M. The witness further testified that he remembered that the defendant was a passenger on the train; that when the witness was collecting the tickets the defendant presented a season ticket good between Boston and Walpole; that the witness told the defendant that he could not take the ticket, and that the train did not stop at Walpole, to which the defendant replied that the ticket was good, and he had ridden with other conductors on those tickets; that the witness then told him that he could not accept the ticket " according to the clause in the contract," and demanded fare to Franklin, which the defendant refused to pay, and the witness told him that he would report it at the office ; that the witness had never accepted a ticket of this kind from any passenger on this train; that the fare to Franklin was sixty-nine cents, and to Walpole forty-eight cents; that there was a crossing of the plaintiff's railroad with another railroad at grade in Walpole; and that the train stopped before reaching the crossing, the locomotive engine being about five hundred feet from the crossing, and the station being in the angle made by the crossing.

The ticket held by the defendant contained the following printed provision : " Issued to and to be used only by J. J. Feely between Boston and Walpole." Then followed a printed statement, as follows : " Good only for passage on trains which stop regularly at the stations named, when officially stamped, and upon the conditions named in contract on back of this ticket," the contract being printed on the last page of the ticket.

On cross-examination, the witness testified that the train had only been running since May 7, 1893; that there was a man placed at the gate of the station in Boston to direct passengers to the trains; and that it was also one of the duties of the brakemen to announce to passengers the stations at which the trains stopped.

Henry J. Lindley testified that he was the conductor on the train in question for about two weeks following May 7, 1893; that he never saw any passengers get off at Walpole, and he never collected any tickets for Walpole; that there was a man in charge of the gate at the Boston station, whose duty it was to give passengers information as to the destination and stopping places of the trains; and that neither he as conductor nor the brakemen on this train took any part in announcing the stops.

The defendant testified that he had ridden on this train twice before the occasion in question; that, on the first occasion he " asked the gateman, who was standing there, whether this train stopped at Walpole for the accommodation of season ticket holders, and he said it did stop at about that station, and that the season ticket holders did and could use it." He further testified: " I thereon took the train; the brakeman was there at the time I took it, and just as I was going into the train the brakeman said, ' Going through?' or ' Where are you going?' and I said, ' I am a season ticket holder going to Walpole.' He said, ' That is all right,' and I got on board the train. The conductor came along — I forget who the conductor was — and took the ticket. The second time that the ticket was taken, I remember distinctly it was not Lindley, but I think some one stouter than Lindley. It was a week day, and on both those occasions the tickets were accepted when I went out. The third time I took this train, I went on board the usual way. I did n't see the conductor that night; the brakeman was right there, and I said ' Walpole?' and he said ' Yes,' and I got on board and the train started up, and when at Hyde Park Cowell came along and I passed him the coupon. As he took it he said something I can't remember, and went to the rear of the train, but he finally came back and said he could n't take that coupon, it was n't good upon that train. I told him it had been taken upon previous occasions. He then demanded a cash fare to Franklin. I told him

it had been taken upon previous occasions, and I did n't propose to pay the cash fare to Franklin.   He took my name and said he would report the matter."

At the close of the evidence, the defendant requested the judge to give the following rulings :

"1. The defendant cannot be compelled to pay a cash fare from Boston to Walpole, or any point beyond, merely because he rode upon said train upon the date in question, and without having an opportunity to alight from said train before reaching Walpole.   In order to obligate him to pay a cash fare upon said train for such distance, he must have had actual notice that a season ticket coupon would not be accepted upon said train for such distance.

" 2. The plaintiff, by its action in previously inducing the defendant to ride to Walpole and accepting said season ticket coupon for fare without objection on its part, so far waived the provision of said ticket that it was 'good only for passage on trains which stop regularly at the stations named,' etc., that, the defendant having entered said car without objection, it cannot compel the defendant to pay a cash fare without giving him notice that such ticket would not be accepted on said train, and giving him an opportunity to alight therefrom.

" 3. If the plaintiff corporation induced the defendant to go upon said train under such representations or inducements upon the part of the plaintiff, or its servants or agents in charge of said train, or having authority to give such information to the patrons of the road in relation to said train as might fairly lead the defendant to believe that one of the purposes for which said train was used was to carry passengers, including season ticket holders, to the point where the train made its usual stop in Walpole, and the defendant, so believing that such use might properly be made of such train, got upon said train and tendered his season ticket for detachment of a coupon to the conductor, and after the train started was informed for the first time that such tickets were not good upon said train, then the defendant is not bound to pay a cash fare for the distance ridden upon said train if he desires to get off and does get off at the first point where the train stops enabling the defendant so to get off said train.

" 4. Upon all the evidence in the case, the plaintiff is not entitled to judgment."

The judge declined to give the first, second, and fourth rulings requested, and gave the third ruling, but found, as matter of law, upon the foregoing evidence, that the gateman or the brakeman could not waive any of the printed conditions of the season ticket; and found for the plaintiff in the sum of forty-eight cents, being the amount of a cash fare between Boston and Walpole. The defendant alleged exceptions.

*T. E. Grover & A. C. Smith*, for the defendant.

*F. A. Farnham*, for the plaintiff.

BARKER, J. The defendant's exception to the admission in evidence of the schedule of trains issued on May 7, 1893, and in force when the defendant took the ride for which the plaintiff asks pay, must be overruled. It was not merely a declaration, but an act designating the train which the defendant took as a train which did not stop regularly at Walpole; and so an act designating that train as one on which the defendant did not have the right to go, under the contract set out upon his season ticket.

Nor can the defendant invoke the doctrine that a passenger who by mistake takes a wrong train is not obliged to pay for his ride to the first station at which he has the opportunity to alight. He boarded the train intending to ride upon it as a passenger for pay to the station at which he left the train; and his mistake in supposing that a coupon from his season ticket would be received in compensation did not render him less liable to pay for the service to which he intended to subject the plaintiff, and which it performed as he had expected. Having intended to ride upon that train from Boston to Walpole, he became a passenger upon the footing that he was to make compensation for the service rendered, and the question is whether the tender of the coupon was a proper offer of compensation. If upon two previous occasions, as the defendant's evidence tended to prove, and the plaintiff's evidence tended to disprove, the conductor had accepted coupons from his season ticket for passages upon this train from Boston to Walpole, the acceptance of the coupons did not show a waiver of the contract that the ticket should not be good for passage upon that train, but merely a waiver of the plaintiff's right to collect cash fares for those two rides. When he took the train on this occasion, all his conversation with the

gateman consisted in his own question, " Walpole ? " and the gateman's answer, " Yes." He said nothing to the gateman about his intention to use his season ticket in payment of his fare to Walpole, and all that the answer could justify him in believing was that a passenger could use the train for a passage to Walpole. He was not told on this occasion that his ticket was good, and if he had been so told by a gateman upon a former occasion, it was competent for the trial court to find that the statement was a waiver of the condition of the ticket for that passage only. The ruling that the gateman or the brakeman could not waive any of the printed conditions of the ticket was one which we cannot say is shown by the exceptions to have been erroneous, and the third ruling requested was allowed by the court except that in connection with it the ruling just mentioned was made.

These considerations show that the rulings of law requested and refused were properly refused, because not well founded in law upon the facts as established in the view of the trial court. *Exceptions overruled.*