we may fairly assume that the report of the referee is evidence of the belief and credit which he gave to the testimony of the father, the mother, and the brother of the plaintiff. Although a very protracted and intelligent discussion of the conflicting evidence has been submitted to us in behalf of the appellant, the plaintiff, in which there is not only insinuation, but direct charge, that the parents have committed perjury by falsely testifying in numerous instances, and by a careful array of different phases of the evidence with a view of showing the improbability of the testimony delivered by the father and the mother, yet we are satisfied with the conclusion stated by the referee upon the whole evidence, and that he was warranted in finding that the plaintiff had accepted the note of the defendant William H. Newton, and agreed to rely thereon, and that he expressly accepted the same in settlement of the sum due him for services, as well as any claim he had upon his grandfather's estate for the legacy mentioned in the complaint. The testimony also supports the finding of the referee to the effect that, subsequent to the delivery of that note, the plaintiff prepared a deed of certain premises to be made by his father to his mother, and assured his mother, at the time she received such deed, that she would thus acquire a clear and unclouded title to the property, freed of any claim by reason of any legacy mentioned in the grandfather's will.

Several rulings were made during the progress of the trial to which exceptions were taken. We have given attention to them, and, so far as the rulings relate to the questions of fact which we have already stated, we are of the opinion that they do not present prejudicial error requiring us to interfere with the conclusion reached by the referee. We are of the opinion that the report of the referee should be sustained.

Judgment affirmed, with costs. All concur.

---

(25 App. Div. 365.)

### WELLS v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. February 5, 1898.)

CARRIER—DUTY TO PASSENGER AT DEPOT.

    One having a railway ticket, after showing it to the gateman, who told him to sit down, and he would notify him when his train arrived, took a seat in the waiting room. While there, it was noticed he was sick, and not in his right mind, and, the gateman being informed thereof, promised to put him on his train, but forgot to, and then told a policeman to put him out of the depot, which, being done, he wandered on the track, and was killed. *Held*, the company was liable as for failure of duty to a passenger.

Action by Mary B. Wells, as administratrix of the estate of George H. Wells, deceased, against the New York Central & Hudson River Railroad Company. Heard on exceptions to an order of the trial term dismissing plaintiff's complaint. Exceptions sustained.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

M. Fillmore Brown, for plaintiff.
Albert H. Harris, for defendant.

FOLLETT, J.   This action was begun March 5, 1897, to recover damages for the death of the plaintiff's intestate, her husband, caused, it is alleged, by the negligence of the defendant.   It was brought to trial November 10, 1897, at a trial term of this court, which dismissed the complaint on the plaintiff's opening, with costs.   The plaintiff excepted to the decision, and her exception was ordered to be heard by this court in the first instance.   The following facts were stated by the plaintiff's counsel in his opening, and many of them are alleged in the complaint.   George H. Wells, the intestate, resided. at Le Roy, N. Y., and on the 4th of January, 1897, purchased a ticket of the defendant entitling him to a passage on its trains from Le Roy to Rochester, N. Y., and return.   He reached Rochester at about 2 o'clock in the afternoon of the day mentioned, and, after transacting some business in the city, returned to defendant's passenger station at Rochester at about 4 o'clock in the afternoon, for the purpose of taking a train to Le Roy, which left the Rochester station at 5 o'clock and 20 minutes in the afternoon.   He took a seat in the waiting room for passengers, having his ticket entitling him to ride from Rochester to Le Roy in his possession.   Before the 5:20 p. m. train came the intestate showed the gateman his ticket, and stated where he wished to go, and the gateman told him to sit down, and when his train arrived he would notify him.   While sitting in the waiting room it was seen by the persons in charge of the station, and by two of his friends, that he was so ill that he did not recognize his acquaintances, and it was apparent that he was not in his right mind. It was said on the argument that he was occasionally subject to fits of epilepsy, and was afflicted with one at that time.   Passengers at this station are admitted to the train shed through a gate in charge of a gateman, who was informed who the intestate was, where he lived, and the train he desired to go out upon, and also that he was not in a condition to care for himself, and the gateman was asked to see that he was put upon the proper train.   The train came and departed, but Mr. Wells was not notified by the gateman of its arrival, and when the gateman saw that he was left he told a policeman who was at the station "that he had forgotten about Mr. Wells, and that evidently he was not in a condition of mind to go on any train; and told him [the policeman] to put him out of the depot, and the policeman took Mr. Wells, and led him to the door at the western entrance."   After Mr. Wells was taken from the station by the policeman he wandered around, and afterwards was seen on the tracks of the defendant's road near the train shed, and about 6 o'clock in the afternoon he was run over and killed by defendant's east-bound passenger train.

If the foregoing facts, which were stated in the opening, are established on the trial, and in no wise explained, they are sufficient to constitute a cause of action.   The relation of carrier and passenger existed between Mr. Wells and the defendant.   Gordon v. Railroad Co., 40 Barb. 546; Weston v. Railroad Co., 42 N. Y. Super. Ct. 156, affirmed 73 N. Y. 595; Grimes v. Pennsylvania Co., 36 Fed. 72; Warren v. Railroad Co., 8 Allen, 227; Wood. Ry. Law, § 298; 3 Elliott,. R. R. p. 2460; 5 Am. & Eng. Enc. Law (2d Ed.) 488 et seq.

Mr. Wells being a passenger, the defendant owed him an active duty, and was bound to exercise due diligence to care for his safety. A greater duty is imposed upon a carrier of passengers to look out for those incapable of caring for themselves, by reason of extreme age, youth, or illness, than for passengers competent to care for themselves. Whether the condition of Mr. Wells was such that the defendant might have refused to receive him as a passenger is not involved in this case, for it did receive him with knowledge of his condition, and the question is whether it exercised due diligence in caring for him. In case he was found, after he became a passenger, to be too ill to travel with safety, it was the duty of the defendant not to undertake to carry him, but to put him in a place of safety, or in the custody of some officer of the law authorized to take charge of such persons. This the defendant did not do. It did not inform the policeman of the intestate's illness and temporary loss of mental power, and place him in his charge, but it simply directed the policeman to put him out of the station. This, under the facts stated in the opening, the defendant had no right to do, and the court erred in directing that the complaint be dismissed.

The plaintiff's exception should be sustained, and a new trial granted, with costs to abide the event. All concur.