NELLIE BUCKLEY, as Administratrix of the Estate of
PATRICK BUCKLEY, Deceased, Appellant, *v.* HUDSON
VALLEY RAILWAY COMPANY, Respondent.

Railroads — negligence — ejection of passenger, while sick and
in a dazed condition, for non-payment of fare — action to recover
for death of such passenger killed by a following car — erroneous
dismissal of complaint — questions for the jury.

A passenger on a car of an interurban street railway was ejected
therefrom by the conductor for the non-payment of fare. It was a
dark night and the passenger was put off the car at a point in a
highway which was not a regular stopping place. Another car,
following about twenty minutes later, struck such passenger and
killed him. Upon the trial of an action against the railway com-
pany for causing his death the plaintiff introduced into the evidence
a rule of the company which provides that, where it is necessary to
eject a passenger for the non-payment of fare, it should be at a regu-
lar station or near some dwelling house. " It should not be in such
a place, in such weather or at such 'unseasonable hour as might
ordinarily endanger the health or safety of the person ejected. The
passenger ejected must not be a child, a person of unsound mind,
or in such feeble or helpless condition as to be unable to take care
of himself, or herself, at the point of ejection." There was evidence,
also, that would authorize the jury to find that the intestate was in
a helpless condition and incapacitated from taking care of himself;
that such helpless condition was known to the conductor; that the
intestate was not visibly intoxicated or boisterous, but, on the con-
trary, sick, pallid and in a stupefied and drowsy condition; that he
made an attempt to pay his fare each time the same was demanded,
but was physically unable to do so. *Held,* that it was error to dis-
miss the complaint; that it was a question for the jury to deter-
mine whether or not there was negligence on the part of the
defendant in ejecting the intestate from the car when he was in
the physical condition described, at a point which was not a regular
stopping place, and in the night time, and also that it was a question
for the jury whether or not the defendant was guilty of negligence
in the operation of the following car in running over the intestate.

*Buckley* v. *Hudson Valley Ry. Co.,* 151 App. Div. 909, reversed.

(Submitted June 12, 1914; decided July 14, 1914.)

Appeal from a judgment of the. Appellate Division of the Supreme Court in the third judicial department, entered May 13, 1912, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*H. A. Howard* for appellant.   Deceased was wrongfully ejected from the defendant's car; he was sick and unable to take care of himself.   Defendant is liable for all injuries that resulted from the ejectment of deceased from the car.   (*Fieldman* v. *N. Y. C. & H. R. R. R. Co.*, 142 App. Div. 339; 205 N. Y. 553; *Gill* v. *R. & P. R. R. Co.*, 37 Hun, 110; *Sanford* v. *Eighth Ave. R. R. Co.*, 23 N. Y. 343; *Higgins* v. *Watervliet Turnpike Co.*, 46 N. Y. 23; *Louisville & N. R. Co.* v. *Johnson*, 31 L. R. A. 372; *Waldron* v. *Louisville & N. R. Co.*, 111 Ky. 30; *Regner* v. *G. F., S. H. & F. E. R. R. Co.*, 74 Hun, 202; *Burch* v. *Baltimore & P. R. Co.*, 3 App. Div. 346; *Hanley* v. *B. H. R. R. Co.*, 110 App. Div. 430; *Railway Co.* v. *Valleley*, 32 Ohio St. 349.)   The case should have been submitted to the jury.   (*Loomis* v. *L. S. & M. S. R. R. Co.*, 182 N. Y. 280; *Pratt* v. *D. H. M. F. Ins. Co.*, 130 N. Y. 212; *Guy* v. *N. Y., etc., R. R. Co.*, 30 Hun, 399; *Hayes* v. *N. Y. C. R. R. Co.*, 20 N. Y. Wkly. Dig. 238; 34 Hun, 627; *Huba* v. *Schenectady R. Co.*, 85 App. Div. 199; 2 Thompson on Negligence, 1236; *Smith* v. *Brit. & No. Am. Mail S. P. Co.*, 86 N. Y. 408.)

*Lewis E. Carr* and *James McPhillips* for respondent. Plaintiff's intestate having boarded one of defendant's cars, and having failed to pay his fare after repeated requests to do so, the defendant's conductor was entirely justified in ejecting him from the car.   (*Nelson* v. *Long Island R. R. Co.*, 7 Hun, 140; *Northern R. R. Co.* v. *Page*, 22 Barb. 230; *O'Brien* v. *B. & W. R. R. Co.*, 15 Gray, 20; *People* v. *Jillson*, 3 Park. Cr. Rep. 234; *Hib-*

*bard* v. *N. Y. & E. R. R. Co.*, 15 N. Y. 455; *Pease* v. *D., L. & W. R. R. Co.*, 101 N. Y. 367; *Swan* v. *M. & L. R. R. Co.*, 132 Mass. 116; *Coleman* v. *N. Y., N. H. & H. R. R. Co.*, 106 Mass. 160; *Huba* v. *Schenectady R. Co.*, 85 App. Div. 199; *Montgomery* v. *Buffalo Ry. Co.*, 165 N. Y. 139.) Having a right to eject the plaintiff's intestate from the car, the evidence utterly failed to establish anything wrongful or unlawful on the part of the defendant in the manner of his ejection or in the place where he was ejected. (Penal Law, § 246; L. 1910, ch. 481, § 40.)

Hogan, J. The plaintiff, as administratrix of Patrick Buckley, deceased, brought this action to recover damages for his death, claimed to have been caused by defendant under the following circumstances:

On April 24th, 1911, the defendant owned and operated a street surface railroad among other places between Hudson Falls and Glens Falls in this state.

About or after nine o'clock on the evening of that day plaintiff's intestate, who resided at Glens Falls, boarded one of defendant's north-bound cars at or near the Hotel Cunningham in Hudson Falls, intending to go to Glens Falls.

The evidence adduced by plaintiff upon the trial would justify a finding by a jury that the intestate, immediately after entering the car of defendant, occupied the third or fourth seat from the rear end of the car; that he looked very pale and white; his eyes were glaring; that he was sitting in a lifeless manner in the seat occupied by him; that after the car started the conductor asked the intestate for his fare, and he dropped his hand and attempted to put it into his pocket; that the conductor passed along and returned a second and third time and again asked him for his fare, and plaintiff's intestate again put his hand to his pocket but could not not raise his hand, but fell asleep with this hand in his pocket, and was unable to answer the conductor. The conductor, upon the second demand for fare, said to Buckley, "If

you do not pay your fare I will put you off the car," and, thereafter, when he again demanded fare, the intestate dropped as if unconscious, but the conductor took hold of him, dragged him along the aisle of the car and into the vestibule, signaled the car to stop and put Buckley off the car on a highway on the easterly side of the north-bound track, at or near a point known as La Pan's curve, near to but not at a regular stopping place in its route, and thereupon the conductor, by signal, ordered the car to go on, which it did, leaving Buckley in the roadway; that the night was dark, but there was a light on the highway and some dwelling houses along the same near to the point where Buckley was ejected from the car; that Buckley was not intoxicated and his breath and person were free from any odor indicating that he had been drinking.

After the intestate was ejected from the car he was seen by a passenger on the car standing near the track. A south-bound car of defendant left Glens Falls about 9:40 P. M., and about twenty minutes later reached La Pan's curve about the place where Buckley was ejected from the north-bound car, and that car ran over and killed Buckley. His body was found curled up against the rail with both feet cut off lying inside the rail. The car was running at a moderate rate of speed and carried a headlight and fender on the forward part of the same.

At the time of his death Buckley was a married man, earning about fourteen dollars a week. He was a steady man and permanently employed.

The defendant had adopted rules for the guidance of its employees which were placed in evidence, and the rule bearing on this case is as follows:

" If any person shall refuse to produce proper ticket or pass, or pay fare, cause the train to be brought to a stop at a regular station, or near some dwelling house, and request such person to leave the train. In case of refusal remove such person therefrom.

" It should not be in such a place, in such weather, or

such unseasonable hour as might ordinarily endanger the health or safety of the person ejected. The person ejected must not be a child, a person of unsound mind, or in such feeble or helpless condition as to be unable to take care of himself or herself at the point of ejection."

The claim of the plaintiff is that upon the evidence thus adduced by her it was for the jury to determine whether or not there was negligence on the part of the defendant in ejecting Buckley, the intestate, from the car when he was in the physical condition described and at a point in the roadway which was not a regular stopping point, in the night time, and leave him at such point while it was apparent to the conductor that he was unable to take care of himself; that the conductor failed to ascertain the real cause of intestate's appearance and conduct, though at least one passenger on the car was acquainted with him; also that it was a question for the jury whether or not the defendant was guilty of negligence in the operation of the south-bound car in running over Buckley.

All inferences in this case are to be drawn in favor of the plaintiff and the evidence produced by her must be regarded in the light most favorable to her. We think that the expulsion of the intestate from the car of the defendant under the circumstances narrated, in view of the rule promulgated by the defendant, was a question which a jury might determine to be the proximate cause of the death of Buckley. Consideration of the evidence appearing in the record in this case would authorize a jury to find that the intestate was in a helpless condition and incapacitated from taking care of himself; that such helpless condition of the intestate was known to the conductor; that Buckley was not visibly intoxicated or boisterous, but, on the contrary, sick, pallid and in a drowsy condition; that he made an attempt to pay his fare each time the same was demanded of him, but was physically unable to do so; that by reason of such condition no voluntary act on his part would be the cause of the final result. (*Smith* v. *Brit. & No. Am. R. M. S. P. Co.*, 86 N. Y. 408.)

Section 40 of the Railroad Law (General Laws, ch. 39) provides, " If any passenger shall refuse to pay his fare the conductor of the train, and the servants of the corporation, may put him and his baggage out of the cars, using no unnecessary force, on stopping the train, at any usual stopping place, or near any dwelling house, as the conductor may elect," but the same cannot receive the broad construction claimed for it by the defendant. While the right to eject a person refusing to pay fare is granted by this section of the Railroad Law, it could scarcely be asserted that the expulsion of a helpless paralytic of advanced years from a train of cars in the night time, even near a dwelling house, and especially at a point where more or less danger might be apprehended, would be justifiable under this provision of the statute.

A sick or aged person, a cripple or a child is entitled to more attention at the hands of the servants of a railroad company than an adult in good health and under no disability. When Buckley was removed from the car he was in a stupor and evidently unable to take cognizance of surrounding objects or to realize where he was. He was seemingly without control of his body, yet he was left in the highway subject to being run down by passing vehicles or to be struck by a car or to fall and sustain serious injuries. It is evident that he wandered in some manner on to the track where his body was found and either lay down or fell across the rails and met his death.

We are of opinion that the rule of the defendant is the more humane policy to adopt, and is in keeping with the rule laid down by Elliot on Railroads:

" If the party is so feeble as not to be able to take care of himself or look out for his own safety, the company should exercise reasonable care to see to it that he is not expelled or abandoned in such a place, and under such circumstances that he will be exposed to unnecessary peril." (Section 1637.)

This rule has received approval in many cases in other

jurisdictions (*Fagg* v. *Louisville & N. R. R. Co.*, 111 Ky. 30; *Louisville, C. & L. R. R. Co.* v. *Sullivan*, 81 Ky. 624; *Connoly* v. *Crescent City R. R. Co.*, 41 La. Ann. 57; *Indianapolis, P. & C. R. Co.* v. *Pitzer*, 109 Ind. 179), and the principle has been applied in some degree at least in this state. (*Regner* v. *Glens Falls, S. H. & F. E. St. R. R.*, 74 Hun, 202; *Sanford* v. *Eighth Avenue R. R. Co.*, 23 N. Y. 343.)

These views lead to a reversal of the judgment and a new trial.

The judgment of the Appellate Division should be reversed and a new trial ordered, costs to abide the event.

Willard Bartlett, Ch. J., Werner, Hiscock, Collin, Miller and Cardozo, JJ., concur.

Judgment reversed, etc.