MARGARET FAGAN, as Administratrix of NICHOLAS J. FAGAN, Deceased, Appellant, v. ATLANTIC COAST LINE RAILROAD COMPANY, Respondent.

Carriers — railroad — negligence — duty of common carrier to take care of intoxicated passenger — railroad company liable for death of passenger taken while intoxicated from a train and left in total darkness near railroad tracks upon which he was afterward injured by passing train.

1. A common carrier is bound to exercise reasonable and commensurate care in view of the dangers to be apprehended. The relation of passenger and carrier does not, under ordinary conditions, terminate until the passenger has had a reasonable opportunity to alight and pass from the station premises of the carrier.

2. Where a railroad company receives as a passenger a man who is stupidly intoxicated and unable to care for himself and accepts from him a ticket entitling him to transportation to one of its stations, even though the train is not scheduled to stop at that place, the company charges itself with all the duties appertaining to and growing out of the relation of common carrier and passenger. It is bound thereby to transport such passenger to his ticketed destination and to exercise reasonable care commensurate with the dangers to be apprehended in taking him from the train and leaving him in its station or other safe place. Where, therefore, defendant having accepted an intoxicated man as a passenger under the conditions above stated, took him from the train and left him in total darkness at a place near the railroad tracks and some distance from the station and the road leading therefrom, and such passenger thereafter wandered upon the tracks and was fatally injured by a passing train, the defendant is liable for his death.

The negligence of defendant was the proximate cause of the injury, and the intoxication of the passenger previous to the time he was left in the dangerous situation was not a direct cause of the injury, and, therefore, was not contributory negligence.

*Fagan* v. *Atlantic Coast Line R. R. Co.*, 170 App. Div. 47, reversed.

(Argued February 6, 1917; decided March 6, 1917.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered November 1, 1915, reversing a judgment in favor of plaintiff entered upon a verdict and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John C. Robinson* for appellant. Upon the evidence the defendant's negligence, and the deceased's freedom from contributory negligence, were properly questions for the determination of the jury. (*Wells* v. *N. Y. C. & H. R. R. R. Co.*, 25 App. Div. 365; *Gill* v. *R., etc., R. R. Co.*, 37 Hun, 107; *Donovan* v. *Greenfeld, etc., Co.*, 183 Fed. Rep. 526; *Buckley* v. *H. V. R. R. Co.*, 212 N. Y. 440; *Black* v. *N. Y., N. H. & H. R. R. Co.*, 173 Mass. 448; *Middleton* v. *Whitridge*, 213 N. Y. 499; *Atchison, etc., Co.* v. *Weber*, 33 Kan. 543; *Connoly* v. *Crescent City R. R. Co.*, 41 La. Ann. 57; *Fagg* v. *Louisville, etc., R. R. Co.*, 111 Ky. 30; *Louisville R. R.* v. *Sullivan*, 81 Ky. 624; *Fox* v. *Michigan, etc., R. R. Co.*, 138 Mich. 433; *Louisville, etc., Ry.* v. *Ellis*, 97 Ky. 330; *Wheeler* v. *Railway*, 7 N. H. 607; *Croon* v. *Chic., etc., Ry. Co.*, 52 Minn. 296; *Eidson* v. *So. R. R. Co.*, 23 So. Rep. 369.)

*George L. Shearer* for respondent. The plaintiff, appellant, failed to establish that the alleged negligence on the part of the defendant was the proximate cause of the death of the plaintiff's intestate. (*Raynor* v. *R. R.*

*Co.*, 129 N. C. 195; *English* v. *N. Y. C. & H. R. R. R. Co.*, 154 App. Div. 181.) The defendant did not fail in its duty to the plaintiff's intestate. (*Thixton* v. *I. C. R. R. Co.*, 8 L. R. A. [N. S.] 298; *McClelland* v. *L., N. A. & C. R. R. Co.*, 94 Ind. 276; *Gilson* v. *J. C. R. R. Co.*, 12 A. & E. R. R. Cas. 132; *Mathieson* v. *S. I. M. R. R. Co.*, 66 App. Div. 610; *Allerton* v. *B. & M. R. R. Co.*, 34 A. & E. R. R. Cas. 563.)

COLLIN, J. The action is, under a statute of Virginia permitting it, to recover damages for the neglect of the defendant by which the death of plaintiff's intestate was caused in that state. The Appellate Division reversed the judgment rendered upon the verdict of the jury and granted a new trial. The plaintiff, in appealing to this court, stipulated as required (Code of Civil Procedure, section 190, subd. 1) that upon affirmance judgment absolute shall be rendered against her.

The order of reversal of the Appellate Division was made subsequent to September 1, 1914, at which time took effect an amendment to section 1346 of the Code of Civil Procedure, which in prescribing that an appeal from a a judgment rendered upon the verdict of a jury might be taken upon questions of law, or upon the facts, or upon both, assimilated the practice on appeal to the Appellate Division in jury cases to that in actions tried before a referee or the court. The Appellate Division, therefore, reviewed all questions of fact and of law (Code of Civil Procedure, section 993) and its order of reversal, silent as to the grounds thereof, imported (Code of Civil Procedure, section 1338) that it approved the findings of fact and reversed upon the law. (*Middleton* v. *Whitridge*, 213 N. Y. 499; *Spitzer* v. *Healy*, 218 N. Y. 737.) We are to determine under the record presented, as a question of law, whether or not the evidence presented an issue of fact; in reviewing it we must give the appellant the advantage of all the facts properly presented and of

every favorable inference that can reasonably be drawn. (*Lalor* v. *City of New York*, 208 N. Y. 431; *Carlisle* v. *Norris*, 215 N. Y. 400, 403.)

The jury might have found as the facts tending to sustain the cause of action the following: The conductor of a train of defendant traveling south from Petersburg, Virginia, on October 20, 1911, found upon it the plaintiff's intestate stupidly intoxicated; he with assistance could walk; he was indifferent or insensible to his surroundings and whatever was transpiring about him and was unable to take care of himself. After several minutes of questioning by the conductor, without answer by him, except he said once "Take me home," he handed the conductor a ticket, purchased at Petersburg, entitling him to passage from Petersburg to Carson, a hamlet twelve or fifteen minutes' run from Petersburg. The train, being an express, was scheduled not to stop at Carson, which was a flag or signal station. The conductor took up the ticket, however, and told a porter that he had a passenger to get off at Carson, and to signal the engineer when the passing whistle for Carson was blown to stop the train, and to go to the intestate to get him off when the stop at Carson was made. The porter obeyed. The train stopped at Carson at eight o'clock and fifty-five minutes in the evening. The conductor and the porter knew that the intestate was so intoxicated as to be incapable of adequately caring for himself. The porter, following the instructions of the conductor there present, assisted the intestate to alight and walk twenty-six feet and across a siding or warehouse track to and be seated upon a plank at the side of a wood pile, and directed him to sit there until the train had passed. It was very dark and the conductor and porter considered it riskful for the porter and the intestate to pass from the train to the wood pile without the lighted lantern carried by the porter. The porter, with his lantern, returned to the train, which immediately started. The next morning, between seven

and eight o'clock, the intestate was found lying on the track of the defendant. He was unconscious and terribly injured by a passing train or trains. The odor of whisky on his breath was very strong. He died within two hours afterward.

The point at which the intestate was seated, as we have described, was on the same side of the track as and one hundred and forty-nine feet north from the depot. He, when found in the morning, was three hundred and seventy feet north of this point. The depot was a small, one-story frame building and was open that night until midnight. In it was a telegraph office in which two small oil lamps were burning. Outside of it no lamp or light was burning. The evidence does not disclose that a person sitting where the intestate was could see any window or light within it. Between the intestate and the depot was no platform, walk, road or pathway. There was the siding track, so filled in, in parts, that wagons could pass over or along it.

Carson was a hamlet, scarcely more than a clearing in woodland with a few scattered buildings, or the crossing of a railroad by a country highway. The intestate had lived there through the seven or eight months last prior to his death. There was no evidence that a person seated as he was could see anywhere a light or a lighted window. After the intestate was assisted from the train and before he was discovered, defendant's trains had passed upon the track as follows: South-bound trains at nine o'clock and thirty-five minutes and eleven o'clock and thirty-five minutes P. M., and two o'clock and ten minutes, two o'clock and forty-three minutes and seven o'clock and twenty-two minutes A. M.; north-bound trains, three o'clock and forty-two minutes, four o'clock and thirty-eight minutes, six o'clock and thirty-three minutes A. M.

From those facts the jury was justified in finding that the conduct of the defendant, in relation to the intestate, was negligent. It was the duty of the intestate to ascer-

tain before taking passage on the train whether or not it was scheduled not to stop at Carson. The defendant might have considered him on the train and ejected him, in a lawful manner, as an intruder or trespasser. (*Chicago, St. L. & P. R. R. Co.* v. *Bills*, 104 Ind. 13; *New York & N. E. R. R. Co.* v. *Feely*, 163 Mass. 205.) The defendant did, in fact, however, accept and undertake to transport him, as a passenger, from Petersburg to Carson, his ticketed destination, and charged itself with all the duties in relation to him and created for him all the rights ordinarily appertaining to the relation of common carrier and passenger. This much is not disputed. Consequently, it was under the general duty to stop at Carson for a time reasonably sufficient to enable the passenger to alight, at a place so that he could, using reasonable care, alight safely and pass by a way reasonably apparent, accessible and safe to the depot at Carson, or a designated and proper place, and thence from the property of the defendant; or, in the absence of such a way, to take reasonable and proper precautions to protect him and make safe his passing from the place of alighting to the depot or an appointed exit from its property. It was bound to exercise reasonable and commensurate care in view of the dangers to be apprehended. (*Cazneau* v. *Fitchburg R. R. Co.*, 161 Mass. 355; *Cumberland R. R. Co.* v. *Hemphill*, 169 Ky. 519; *Brassell* v. *N. Y. C. & H. R. R. R. Co.*, 84 N. Y. 241; *Spofford* v. *Central R. R. Co. of New Jersey*, [Court of E. and A. of New Jersey, June, 1916] 98 Atl. Rep. 246; *Dieckmann* v. *Chicago & N. W. R. Co.*, 145 Iowa, 250; *Pere Marquette R. R. Co.* v. *Strange*, 171 Ind. 160; *White Water R. R. Co.* v. *Butler*, 112 Ind. 598; *Gaynor* v. *Old Colony & Newport Ry. Co.*, 100 Mass. 208; *Hulbert* v. *New York Cent. R. R. Co.*, 40 N. Y. 145; *Ellis* v. *Chicago, M. & St. P. Ry. Co.*, 120 Wis. 645; *Pennsylvania Co.* v. *McCaffrey*, 173 Ill. 169; 4 Elliott on Railroads [2d ed.], section 1590a.) The relation of passenger and carrier does not, under ordinary

conditions, terminate until the passenger has had a reasonable opportunity to safely alight and pass from the station premises of the carrier. (*McKimble* v. *Boston & Maine R. R.*, 139 Mass. 542, and cases above cited.)

Duties of a carrier of the general nature under consideration here are often in the alternative. As an illustration: the counsel for the present respondent states that the greater part of the train could not be directly in front of the depot, because the length of the passenger cars was many times that of the depot. That fact imposed upon the defendant the duty either to have maintained and kept lighted, within reasonable and suitable care, a platform or walk, connecting the points of disembarkation with the depot, for use by the passengers leaving the train, or to have guided and protected the passengers from the disembarking points to the depot. The duty to assist, or warn, or guide and protect, not in itself a direct duty, may arise from the unusual conditions created by the place of stoppage, which place is not in itself the violation of a direct duty. The defendant was bound to use such care as arose out of those conditions and was commensurate with the danger to be reasonably apprehended from them. (*New York, Chicago & St. L. Ry. Co.* v. *Doane*, 115 Ind. 435.)

The defendant was under the special duty, with regard to the intestate by reason of his insensible condition, known to the conductor, of exercising such care, precaution and aid as were reasonably necessary for his safety, and of bestowing upon him any special care and attention beyond that given to the ordinary passenger which reasonable prudence and care demanded for his exemption from injury. The care which it was bound to exercise with respect to his safety would have reference to his known condition and the situation as a whole. The fact that the condition was self-imposed does not mitigate the duty. (*Bragg's Admr.* v. *Norfolk & W. Ry. Co.*, 110 Va. 867; *Warren* v. *Pittsburgh & B. Ry. Co.*, 243 Penn.

St. 15; *L. & N. R. R. Co.* v. *Johnson*, 108 Ala. 62;
*McCoy* v. *Millville Traction Co.*, 83 N. J. L. 508; *Louis-
ville & N. R. R. Co.* v. *Tuggle's Admr.*, 151 Ky. 409;
*Buckley* v. *Hudson Valley Ry. Co.*, 212 N. Y. 440;
*Fagg's Admr.* v. *L. & N. R. R. Co.*, 111 Ky. 30;
*Atchison, T. & S. F. R. R. Co.* v. *Weber's Admr.*,
33 Kans. 543; *Black* v. *N. Y., N. H. & H. R. R. Co.*,
193 Mass. 448; *Price* v. *St. L., I. M. & So. Ry. Co.*,
75 Ark. 479; *Burke* v. *Chicago & N. W. Ry. Co.*,
108 Ill. App. 565; *Haug* v. *Great Northern R. R. Co.*,
8 N. Dak. 23; *Wells* v. *N. Y. C. & H. R. R. R. Co.*,
25 App. Div. 365.) Certain of those citations are of
cases in which a passenger was ejected from the train
because of misconduct or other reason. The rule we
have stated is applicable to passengers generally. In
*Louisville & N. R. R. Co.* v. *Tuggle's Admr.* (151 Ky.
409) the court said (415): "The negligence of defendant
consisted in its leaving Tuggle, if it did so leave him, in a
drunken and helpless condition, to the knowledge of
appellant's conductor and brakeman, at a late hour of the
night, in a strange place, upon a railroad track, and with-
out any one to take care of him." In *Murphy, as Admx.,*
v. *Boston & Me. R. R. Co.* (216 Mass. 178) the intestate
was ejected at a station. The court said (179) : "The
intestate upon removal having ceased to be a passenger,
some affirmative proof of his due care was required under
the statute. (Citing the statute.) When last seen alive
he was in the station in a position of security from the
danger of passing trains, and his subsequent movements
until his lifeless body was found on the railroad track
were not observed by any one, nor are there enough cir-
cumstances disclosed to furnish even a conjecture as
to his conduct. * * * But there is no contention that
the station to which the intestate was removed was not
reasonably safe. The defendant's servants, while bound
because of his obvious disability to leave him in a place
within the station where if he had remained his personal

safety would not have been endangered, were under no obligation to escort him from the premises to the public ways, or to take further measures for his protection." In *Wells* v. *N. Y. C. & H. R. R. R. Co.* (25 App. Div. 365, 368) the passenger desiring to take a train being ill, was put out of the depot and subsequently was killed on the track. Mr. Justice FOLLETT, writing for the court, said: "In case he (Mr. Wells) was found, after he became a passenger, to be too ill to travel with safety, it was the duty of the defendant not to undertake to carry him, but to put him in a place of safety, or in the custody of some officer of the law authorized to take charge of such persons." In *Louisville & N. R. R. Co.* v. *Ellis* (97 Ky. 330) the court said (340) : "We are of the opinion that if the deceased was ejected from the train when he was in such mental or physical condition from intoxication or other cause as rendered him incapable of caring for himself, and the officers or agents in charge of the train knew of his then helpless condition, and to put him off the train in such a condition at that time and under the circumstances, and in the place where he was ejected, would necessarily or probably expose him to danger of death or great bodily harm from passing trains, and that while in such condition he was, shortly after his expulsion, run over and killed by a train on the road of appellant, the appellant is liable for the damages resulting, for killing him." Our statement that the jury was justified in finding that the conduct of the defendant, in relation to the intestate, was negligent is too clearly true to require a probative analysis or discussion of the evidence. Its conduct in placing him as and where it did was charged with danger to him. The argument of its counsel that it left him in a safe place and he would not have been killed if he had not moved is futile. The many passengers of railroad companies, who have been injured in going from the depots to the trains, by the negligence of the companies, were in a safe place while in the depots and would not

have been hurt if they had remained in them; but we have yet to learn of a case in which it was argued that a company was not liable because the passenger was on his way to a train. The rights of passengers to go, with reasonable safety, from depots to trains and from trains to depots are co-equal.

The jury was justified in finding, also, that the negligence of the defendant was the proximate cause of the injuries to and the consequent death of the intestate. Under the evidence in the record here, and under the charge of the trial justice, the jury could so have found, in case the evidence tended to prove (a) that the negligence caused the injuries, and (b) that those or similar injuries were reasonably to be apprehended by the defendant from the negligence, (*Milwaukee & St. P. Ry. Co.* v. *Kellogg*, 94 U. S. 469.) Direct or positive evidence that the negligence caused the injuries was not necessary. It has become the established law of this state that in an action to recover damages for a death negligently caused, the relevant conditions and circumstances surrounding and relating to the occurrence, unless they interdict as a matter of law an inference or inferences necessary to the verdict, may be submitted to the jury, in the absence of direct proof, in order that the jury may determine the inferences, if any, which they create. (*Stump* v. *Burns*, 219 N. Y. 306.) An evidential inference must have a reasonable source or basis in the proven facts, and those facts must not tend to support a contradictory or inconsistent inference, or, at least, must sustain the inference invoked with a paramountcy overwhelming an inconsistent inference. The facts in the instant case warrant the finding that the placing of the intestate upon the plank and leaving him there caused the injuries. He was surrounded by darkness impenetrable to the vision — a darkness so dense that the conductor and porter feared to assist the intestate to the wood pile without the light of the lantern. Behind him and extending upon his either side for a considerable

distance was a pile of wood corded above his height.   In front of him was the siding or warehouse track extending northerly to its point with the main track and southerly toward the depot.   Not a light was visible to him; there was no fact or circumstance to make him comprehend where he was.   There is no evidence that he knew that he was at Carson or where or in which direction the depot was, or that he ever before had been where he was. Neither the conductor nor the porter gave him a word of information or an instruction, except that he should not move from where he was placed until the train passed. He was in a drunken stupor.   Common observation, if not common experience and knowledge, dictate the inference that he remained there in the stupor or asleep for a period of hours.   But he was not bound to the plank, and when able and desirous was free to arise and walk. To reach the depot he was obliged to get up and walk. Again common observation and knowledge dictate the inference that at some time he did, in some measure, recover sense, desire and will; that he remained bewildered and bereft in part of his intelligence and judgment — a condition which the darkness, the strangeness and solitude aggravated; that in such state he arose and desired to go, if possible, to the depot or some place which would enable him to know where he was, and that in his searching and attempt he went upon the track and was struck down by a train.   Certainly those facts and inferences create a legitimate causal connection between the negligence of the defendant and the death of the intestate.

The jury were justified in finding that the injuries were reasonably to be apprehended by the defendant. The defendant knew all the facts adoptable by the jury as we have stated them.   It knew that the intestate in any reasonable probability would not remain all the night on the plank; that sooner or later his volition would become operative and he would seek his ticketed destina-

tion or the depot there; that in doing so he would have to walk, and would lack the guidance of his senses, discretion and judgment in their normal condition. The reasonable inference and supposition was that he would go upon the track. That inference suggested the command of the porter that he should not move until the train had passed. The track alone of all about him had the element of certainty. The defendant knew that the injuries he received or similar injuries were the natural and probable consequence of the use of the track by a person conditioned and situated as he was.

The intoxication of the intestate at the time he was assisted from the train was not contributory negligence. He was negligent in becoming intoxicated, but the defendant was bound to reasonably care for him as he was. If he, unintoxicated, had taken the seat on the plank and there become intoxicated, or being intoxicated and not a passenger and under the protection of the defendant went by reason of intoxication upon the track, his own act would have produced the dangerous situation and he would have been negligent. His intoxication previous to and at the time the defendant unlawfully placed him, as its passenger, in the hazardous situation is not a direct and proximate cause of the injury and, therefore, not contributory negligence. (*Black* v. *New York, N. H. & H. R. R. Co.*, 193 Mass. 448; *McCoy* v. *Millville Traction Co.*, 83 N. J. L. 508; *Price* v. *St. L., I. M. & So. Ry. Co.*, 75 Ark. 479; *O'Rourke* v. *Louisville & N. R. R. Co.*, 183 Ill. App. 593; *Gill* v. *Rochester & P. R. R. Co.*, 37 Hun, 107.) An inference that he became entirely sober before he went upon the track is forbidden by the fact that after he was taken from the track to the depot the odor of whisky on his breath was very strong. An inference that he became entirely sober and then reintoxicated is incredible and baseless. No bottle or receptacle was found anywhere. There was no evidence that liquor of any kind could be procured at Carson. There is not the slightest improba-

bility in assuming or inferring that the original and thorough intoxication continued through the night.

An examination of the record and the brief of respondent does not disclose any error of law at the Trial Term.

The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs to the appellant in the Appellate Division and this· court.

CARDOZO, POUND, MCLAUGHLIN and ANDREWS, JJ., concur; HISCOCK, Ch. J., and CHASE, J., dissent on opinion of RICH, J., below.

Order reversed, etc.