■ HELEN M. DWYER, Appellant, v. CITY OF NEW YORK et al., Respondents.

MEMORANDUM BY THE COURT. Plaintiff failed to make a prima facie case of negligence on the part of the defendants. Giving plaintiff's evidence the most favorable inferences, it appears that on January 9, 1956, at about 9:20 A.M., plaintiff slipped and fell upon ice that had formed on a safety island as a result of sleet. It also appears that the accident occurred while it was still sleeting — a weather condition, which according to the official United States weather report for the area, had prevailed for some 10 hours prior to the accident. Concededly, the island was controlled and maintained by the City of New York, and part of it was used as a bus stop. On the morning of the accident, the bus of the New York City Transit Authority, in which plaintiff was a passenger, stopped in the roadway about 10 or 12 steps from the island, and plaintiff dismounted at that point. The roadway was slushy, but not iced because of salt which had been spread in the area by the city during the night. Plaintiff walked across the roadway to the safety island — which, according to plaintiff, was glazed with ice about two inches thick — stepped upon the island, and then slipped and fell. There was no direct proof or any evidence from which an inference could be drawn that there had been any unusual accumulation of snow and ice on the island which would make the parties liable. (*Williams* v. *City of New York*, 214 N. Y. 259.) In fact the weather report indicated that the total snowfall for the month of January, 1956 was only 1.5 inches, which, except for January, 1950, was the lightest fall since 1934. From the evidence, the slippery condition of the island was unquestionably solely due to freezing rain and sleet deposited that morning and during the preceding night. There is no evidence to support an inference of any accumulation of ice on the safety island from January 3, 1956 which in any way contributed to the accident. Since the accident occurred in the course of the freezing rain, the defendants were under no duty to correct the surfaces until a reasonable time after the cessation of the storm. (*Falina* v. *Hollis Diner*, 281 App. Div. 711, affd. 306 N. Y. 586; *Bressler* v. *Rule Realty Co.*, 219 App. Div. 529.) Whether the island was used as a bus stop by the defendant Transit Authority is immaterial. Plaintiff, by her own testimony, admits she dismounted from the bus in the roadway and not upon the icy island. There was no causal connection between discharging the passenger in the roadway and the happening of the accident. Since the accident happened when plaintiff was already on the island, she was not exposed to the injury by virtue of having had to negotiate the roadway. Therefore, the complaint was properly dismissed at the close of the plaintiff's case.

McNALLY, J. (dissenting). Plaintiff was nonsuited at the close of her case in this action for personal injuries. She slipped and fell on an icy safety island designated by the city as a bus stop and sustained a fracture of the left femur.

On January 9, 1956 plaintiff was a passenger on a bus operated by the Transit Authority. Plaintiff boarded the bus at the intersection of 2nd Avenue

and 20th Street, Borough of Manhattan, and was proceeding to her place of business at 50 Church Street. Plaintiff was discharged at the last stop which is a safety island designated as a bus stop by the city.

The safety island was erected and is maintained by the city. It is at the intersection of Park Row and Broadway, 100 feet long, north to south, 12 feet wide, east to west, and 5 inches above the roadway. The island is bounded on the west by Broadway and on the east by Park Row. A railing borders its Broadway side. City Hall Park is adjacent and north of it. The area is densely populated; vehicular traffic is continuous. The occurrence here was during the morning rush hour.

Plaintiff was discharged from the bus at 9:20 A.M. The bus had stopped east, alongside and slightly ahead of another bus parked at the curb of the safety island, which was at a point 10 to 12 feet away from and east of the curb. The roadway was full of slush. Plaintiff proceeded to and in her attempt to mount the curb of the safety island slipped and fell on its ice-covered surface. Other passengers also fell. The entire island was covered with a layer of bumpy and uneven ice estimated to be one to two inches thick.

The official United States weather report for the Battery Place area, nearest to the site of the occurrence, shows precipitation of .6 inch of snow and sleet on January 3, 1956, six days prior, and no precipitation of snow or sleet thereafter to and including the time of the occurrence. On January 8, 1956 there were unmeasurable traces of precipitation between 9:00 and 12:00 P.M. and on the morning of January 9 until but not including 10:00 A.M., .25 inch of precipitation. The jury could have found there had been an accumulation of ice on the safety island since January 3, 1956, which had been supplemented by the precipitation on January 8 and 9, 1956. The icy condition was apparent and the Transit Authority regularly operating an established bus line with its terminal at the safety island is chargeable with knowledge thereof.

A common carrier owes a passenger the general duty to stop at a place where he may alight safely and towards that end to " exercise reasonable and commensurate care in view of the dangers to be apprehended." (*Fagan* v. *Atlantic Coast Line R. R. Co.*, 220 N. Y. 301, 306.)

The Traffic Regulations of the City of New York (art. 11, subd. 141-B) provide: " No driver of an omnibus shall pick up or discharge passengers on any street except at bus stops designated by the Commissioner of Traffic in writing."

Here the bus stopped to discharge passengers about 10 to 12 feet from the curb of the safety island making it necessary for the plaintiff to wade through slush in order to mount the ice-covered safety island. Had the Transit Authority complied with the Traffic Regulations plaintiff would not have found it necessary to negotiate the curb under such hazardous conditions. Apart from any other consideration the additional exposure to injury resulting from the Transit Authority's violation of the regulation may support a finding of negligence. In *Frazier* v. *Westchester St. Transp. Co.* (297 N. Y. 620) the bus stopped with its right side about five feet from automobiles parked at the curb and plaintiff while proceeding to the curb was struck by a bicycle proceeding between the bus and the parked cars. There the Traffic Code of the City of New Rochelle required an omnibus when receiving or discharging passengers to be stopped " as near the curbing as possible ". Liability of the operator of the bus grounded on violation of the Traffic Code was sustained.

In *Thomas* v. *Jamaica Buses* (5 N Y 2d 862) plaintiff, 55 years of age, to the knowledge of the operator of the bus, was wearing a brace on her left leg. The bus stopped two feet from the curb at an angle because an automobile

was stopped in the bus stop. In dismounting to the roadway plaintiff was unbalanced and fell. The adjacent curb was five inches above the roadway. Plaintiff had been required to negotiate 17 inches to the roadway and would have had to step down only 12 inches had the bus been curbed. Liability of the owner and operator of the bus was sustained without reliance upon a violation of the Traffic Regulations. There the operator's knowledge of plaintiff's disability cast upon the defendants the obligation to exercise reasonable care commensurate thereto; the danger to be apprehended was in part enhanced by the plaintiff's apparent disability. Here the danger to be apprehended was also increased by the necessity of negotiating an ice-covered curb after wading through heavy slush because of the omission to curb the bus in violation of the Traffic Regulations.

The Transit Authority also owed plaintiff the duty to exercise reasonable care in respect of the hazardous condition of the bus stop. The safety island is surrounded by busy thoroughfares with a constant stream of motor vehicles. In the exercise of reasonable care the need to provide a safe place from which to cross one of the roadways bordering the island should have been anticipated. A carrier's obligation to a passenger embraces the duty to provide safe exit from the terminal. (*Fagan* v. *Atlantic Coast Line R. R. Co., supra.*) The duty extends to a city street if it be the place of discharge and is independent of and not coextensive with the city's obligation to maintain its streets. (*Keener* v. *Tilton,* 283 N. Y. 454, 456; *Barcellos* v. *Triboro Coach Corp.,* 11 N Y 2d 702; see, also, *Bruno* v. *Vernon Park Realty,* 2 A D 2d 770.) Although it may be that the Transit Authority was not primarily obligated to take measures to eliminate or mitigate the effect of the icy condition of the safety island, that is not to say that it was not under an obligation to cause the city to take such measures and on this record it does not appear that the Transit Authority requested the city to act or took any other measures with reference to the condition.

The absence of ownership or control may preclude liability for transitory overcrowding where the intending passengers are waiting in the public street over which the carrier has no control (*McMahon* v. *Surface Transp. Corp.,* 272 App. Div. 202); or where the injured person is not the carrier's passenger (*Sheridan* v. *City of New York,* 6 N Y 2d 765). Here the carrier affirmatively and knowingly placed the plaintiff in a place of danger although it was its obligation to discharge her at a safe place.

The city concededly constructed and was under the legal obligation to maintain the safety island which it had designated as a bus stop. Ordinarily the nature and extent and the duration of the street condition complained of are relevant considerations in resolving the city's obligation with respect to it. In the instant case, however, it appears that the city on January 8 and 9, 1956 salted the roadways in and around the safety island but omitted to act similarly with regard to the bus stop. The salting of the highways was efficacious for while there was a great deal of slush the icy condition had been largely eliminated. The city therefore appears to have apprehended the danger of the icy highways; it appears, however, not to have acted with respect to the apparently dangerous icy safety island. Having acted, whether the city did so adequately and reasonably under the circumstances was a jury question. (*McGuire* v. *Interborough R. T. Co.,* 104 App. Div. 105, 108.) The city's legal obligation as to ice on a sidewalk is more stringent than with reference to ice on the highway. (*Williams* v. *City of New York,* 214 N. Y. 259, 266.) And the fact that the safety island was designated by the city as a bus stop serves to emphasize the need to exercise reasonable care to alleviate a dangerous condition thereon. (*Carr* v. *City of New York,* 281 N. Y. 469, 472.)

The judgment should be reversed and a new trial directed.

Rabin, J. P., Valente, Eager and Steuer, JJ., concur in Memorandum by the Court; McNally, J., dissents in opinion.

Judgment, dismissing the complaint, affirmed, with costs to respondents.