**Arthur E. SABO and Mildred Sabo, Plaintiffs,**

v.

**BRECKENRIDGE LANDS, INC., a Colorado corporation, Defendant.**

Civ. A. No. 9085.

United States District Court
D. Colorado.

July 6, 1966.

Hindry, Erickson & Meyer, Denver, Colo., for plaintiffs.

Sheldon & Nordmark, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

The above action was tried to a jury from May 23, 1966, through May 26, 1966, and a verdict was returned for the defendant on all issues. Judgment was thereupon entered on the verdict. The plaintiffs' motion for new trial now stands submitted.

In this case plaintiff Mildred Sabo suffered a compression fracture of the lumbar vertebra as a result of a fall from a chair of defendant's chair lift at the Breckenridge Ski Area. Although Mildred's husband Arthur is also a plaintiff, we need not consider his problems specifically. The happening occurred as the plaintiff made an unsuccessful effort to board defendant's chair lift at the midway boarding point. She failed to become seated, and was carried a distance of some 275 feet while in a dangling position before the chair lift finally came to a stop. She was then twenty feet off of the ground. The valiant if somewhat frantic efforts of both plaintiff and her husband to bring her into a sitting position were ineffectual, and after dangling until both she and her husband were exhausted, she dropped to the ground and suffered the injuries complained of.

There were serious factual disputes. Evidence on behalf of the plaintiff was to the effect that she and her husband, both of whom were experienced skiers, first rode the lift from the lower level to the top and then skied to the midway embarkation point to again ride to the

top. The plaintiffs' evidence was that the attendant there was preoccupied with shoveling snow. The Sabos moved into position in preparation for sitting on the moving chair to be carried up the mountain. They testified that when the appropriate chair arrived it struck Mrs. Sabo's person well above her sitting area instead of at the backs of her legs just above the knee area, where it should have contacted her; that as a result she did not get seated, and the chair moved aloft with her holding the adjacent bar and trying desperately to pull herself into the chair. Her husband joined the effort but was handicapped by his awkward position in relation to her. Their chair moved forward a distance of 275 feet before the attendant succeeded in pressing a button inside a building located near the ramp. The button signaled the control operator at the bottom who stopped the lift. Plaintiff was then twenty feet above the ground level.

Defendant's version, through the attendant, was that he caused the lift to be stopped almost at once. At that point plaintiff was a mere nine feet from the ground and, no doubt, could have escaped serious injury, in that her fall could have been broken by him had she dropped at that level. The attendant further testified that as a result of instructions from plaintiff's husband he had the lift moved to the next tower so that her husband could remove her by utilizing the tower. The attendant was somewhat inexperienced.

There was a signal button inside the "shack" near the boarding ramp which told the control operator at the bottom to stop the entire lift. The attendant was in proximity to the shack and was thus in a position to have quickly brought the lift to a halt.

What actually happened is difficult to reconstruct. It does, however, seem questionable that the chair on plaintiff's side was as high above the ground level as she indicated it to be. It seems more likely (if the chair struck her high) that she was flexed down too low. It also seems unlikely that the attendant stopped the lift at once, as he said, and thereafter moved it out to the point of great danger where plaintiff fell. It is, of course, possible that the attendant became panic-stricken and froze, thus allowing the chair to travel the long distance.

There is no dispute about how far it eventually traveled, that is, the 275 feet; and there is no dispute about its speed—it was moving at approximatly 8.3 feet per second.

The case was presented and tried on the theory of negligence and contributory negligence. Plaintiff did not plead last clear chance nor did she demand an instruction on such a theory.

The part of the charge which contains the instructions to the jury on negligence and contributory negligence is as follows:

"Now, what is negligence, which is the ultimate issue that you are called upon to determine in this case? It is defined as conduct which falls below the standard that is established by law for the protection of others against unreasonably great risk of harm. In other words, this is described as conduct, first of all, and it says that it is conduct which does not come up to the standards as established by law for the protection of others against unreasonably great risk of harm. The test or criterion for determining whether the conduct meets this standard established by law is, first of all, an objective one. In other words, we try to avoid having every person determine for himself whether the conduct has come up to the standard by using what's called the reasonable-man standard. In other words, every person in relationship to another has to come up to what's called the standard of the reasonable man; sort of a mean standard that is required of everybody in our society. They must act reasonably in their relationships to others, particularly if they are in such association with them that if they fail to exercise reasonable care the other person is apt to be injured. As I say, we judge

whether they have come to this standard by what a reasonable man—That is—There isn't any such person. He is a fictional character—what a reasonable man would have done under those same circumstances. Did they act reasonably? In other words, this is the criterion. And a failure to do what an ordinarily careful and prudent person would have done under the circumstances of the case or the doing of something that an ordinarily careful and prudent person would not have done under the circumstances of the case, is said to be negligence.

"Now, there is one other factor here that should be evaluated or considered in this respect and that is, that the ordinarily prudent person is required to act—or to refrain from acting to prevent harms that are reasonably foreseeable through the eyes of a person—of such a person. In other words, you do not have to take precautions against things that you cannot anticipate—that you cannot reasonably foresee. I suppose you might be negligent if you were to drive your vehicle on a very lonely country road at an unreasonable rate of speed, but you couldn't be guilty of any actionable negligence because you wouldn't have threatened harm to anybody. So, it contemplates that you shall act unreasonably in relationship to someone else. You see? That's the point. In other words, negligence in the abstract; recklessness or inadvertence in the abstract, doesn't solve the problem. But, when you are placed in this relationship to somebody else, that is when it comes into play, and it is a question of reasonable foreseeability from the standpoint of a prudent man looking forward prior to the event in question.

"Now, as applied to the case at bar, the allegations of the complaint are that the defendant failed to maintain this take-off area—ramp, as I call it—in a reasonably safe condition so that passengers can board it. Basically, this is their claim; that it was—that the distance was perhaps not correct between the chairlift and the platform, or that the platform was not large enough, or that it was not uniformly level. And I think their other allegation of negligence is that the defendant failed to operate this chairlift properly, whereby they failed to stop it once the plaintiff was in peril. In other words, I think they are seeking, generally, to show negligence of the defendant on these two theories. Of course, the defendant denies each and every one of these allegations and maintains that the plaintiff was guilty of contributory negligence. Now, we have been hearing about contributory negligence, and before going on, I think I should give you the brief definition of that. I mean, it's very similar to the definition of negligence; only, it involves the failure of a person to take reasonable precautions to protect himself as distinguished from reasonable precautions to protect somebody else who is in relationship to him. Now, one who does not bring his conduct up to the standard of reasonable prudence that I have described for the protection of himself against unreasonable hazard or risk of harm, is barred absolutely from a recovery. In other words, notwithstanding that another person has been at fault, if the conduct of the plaintiff has been unreasonable and has been a substantial cause of her injury, and it's not a matter of equating who was the most at fault; but the law is pretty firm—sometimes harsh—on this question. It says that if a person has been guilty of what we call contributory negligence; that is, fault that substantially produced her harm, she is barred altogether; cannot recover anything.

"Now, it isn't enough that the plaintiff proves negligence. He must also—She must prove that it was the proximate cause of the harm suffered. Proximate cause as here used is that cause which, in natural and continued sequence, unbroken by any intervening cause, produces the injury complained of and, it is said, without which such

result, would not have occurred. Now, in the case at bar, I think I should add a few more comments on this negligence problem that you are going to have to deal with. I have just given you the outlines of what it is, and I say to you, that everybody has his own ideas, perhaps, as to what carelessness or negligence is, but you are bound by the legal definition which I have just given; that is, the failure to take precautions, et cetera. I am not going to go through it again.—which a reasonable man would have taken in the light of the circumstances as he saw them at the time.

"Now, as related to this case at bar and in determining whether or not the defendant exercised the reasonable care of a prudent man, which is the standard required by law, you may consider the relationship between the parties; the activity of the parties; the manner of maintaining and operating the lift, and all other facts and circumstances. And by the way, if you find the employee was guilty of negligence, that is automatically binding upon the defendant corporation. In other words, a company is responsible for the negligent acts of its servant or agents, performed in the scope of their duty. This is no real issue in the case. If he was negligent, then so they are, or he wasn't; I mean, he, for this purpose, is Breckenridge Lands, Inc.; that is, the person who was in charge there at this intermediate point. Now, when a person is operating a conveyance; that is, sometimes we call them a carrier, whether it be the Tramway company, railroad or bus company, this is comparable; but I wouldn't want to call—to say to you that this is in exactly the same category. But when a person is operating a conveyance which is a moving force, for a fee, they are in complete control and charge of it. And, of course, it follows from this fact that they are under a duty to protect their passengers from unreasonable hazards. Now, the fact that this is true; that he is in charge, does not really alter the standard of care that I have described to you. It continues to be the standard of reasonable care. However, even though the standard is the same, because of the peculiar relationship, it does result in the operator of such a conveyance having to exercise more care; a greater quantum of care, in order to meet this standard of ordinary care. In other words, since they know the hazard from having installed it, from having operated it, they must exercise care commensurate with the known risk, and commensurate with the harm which they can reasonably anticipate or foresee, if they fail to exercise care. I say to you that you can take into account in determining whether the defendant acted as a reasonable prudent person in the circumstances, you may take into account— you may consider it in the light of the relationship of the plaintiffs as fare-paying passengers, so to speak, to the defendant who was in charge of this conveyance; as I say, through the particular relationship, and the defendant who knew the particular risk involved. Similarly, in evaluating the conduct of the plaintiff; determining whether she was guilty of contributory negligence, which can be regarded as a proximate cause of the injury, you may consider the surrounding circumstances in relationship to her; that is, the fact that boarding a ski lift is not an activity that is wholly free from hazard, and she, in order to meet the standard of care to protect herself from unreasonable risk of harm, must have exercised more care because of the fact that, as I say, getting on such a lift does demand it. That's all."

We have carefully re-examined the above charge and have concluded that although it is by no means a work of art, it is substantially accurate as far as it goes. Counsel maintains that it is too complex for the comprehension of the average juror. It may be, but the other alternative is to give the jury mere ritualistic stock instructions on negli-

gence, contributory negligence and proximate cause which are meaningless and as a result of which the jury proceeds to apply its own notions as to the meaning of negligence and contributory negligence. Jurors must be presumed to have sufficient intelligence to understand fundamental concepts. Besides, the instruction is not that complex. Therefore, this contention does not have merit.

■ The matter which does produce concern is that the plaintiff did not have presented to the jury adequately the theory of her case based on the failure of the defendant to act affirmatively and carefully to prevent or reduce her peril after she became helpless. At that time defendant was in complete control. It does not suffice to say that the instruction on contributory negligence should not have been given. The circumstances justified submission of this question at least to offset the negligence, if any, of the defendant in negligently maintaining the ramp, which was plaintiff's main theory. The difficulty is that this contributory negligence, to the extent it existed, faded into the background and was of no consequence after her original mishap in failing to board the lift. Yet, as far as the jury was concerned, once guilty of contributory negligence, the plaintiff continued to be barred notwithstanding that a new and different duty existed in relationship to her helplessness. The instruction failed to limit contributory negligence so as to allow plaintiff's original carelessness to be purged in the new framework which emerged. The jury should have been told that this original "sin", so to speak, does not necessarily continue to be a bar if the defendant is subsequently in a position to avoid the injury.

The American Law Institute Restatement of the Law of Torts 2d, Sec. 4799, Comment a, explains that two theories are commonly given for this departure from the general rule that contributory negligence bars recovery. One of these is that the later negligence of the defendant involves a higher degree of fault. The authors add:

"* * * but it fails to explain many cases in which his negligence consists merely of a failure to discover the situation at all, or in slowness, clumsiness, inadvertence, or an error in judgment in dealing with it. The other explanation is that the plaintiff's negligence is not a 'proximate' or legal cause of the harm to him, because the later negligence of the defendant is a superseding cause which relieves the plaintiff of responsibility for it. * * *"

The authors go on to say that this is not in line with modern theories as to the real nature of proximate or legal cause. However, this is not convincing in this particular case, where the plaintiff's original negligence, if any, is found in a distinct set of facts which are remote from her subsequent injury. Thus, for example, in failing to get into the chair she did not in law expose herself to the risk of the attendant's freezing and failing to stop the lift.

A somewhat similar legal theory appears in the "rescue" cases. See A.L.I. Restatement of Torts, 2d, Sections 322, 324. Here, as in the case at bar, the plaintiff has been guilty of contributory negligence, but the plaintiff's helpless condition and the control over the instrumentality exercised by the defendant give rise to a duty to exercise care to prevent further harm. The comment to Section 322 reads as follows:

"a. The rule stated in this Section applies not only where the actor's original conduct is tortious, but also where it is entirely innocent. If his act, or an instrumentality within his control, has inflicted upon another such harm that the other is helpless and in danger, and a reasonable man would recognize the necessity of aiding or protecting him to avert further harm, the actor is under a duty to take such action even though he may not have been originally at fault. This is true even though the contributory negligence of the person injured would disable him from maintaining any action for the orig-

inal harm resulting from the actor's original conduct."

Only a few of the numerous case examples need be cited by way of illustration.

In L. S. Ayers & Co. v. Hicks, Ind. 1942, 220 Ind. 86, 40 N.E.2d 334, 41 N.E.2d 195, 356, the plaintiff negligently caught his hand in a moving escalator. The defendant store's failure to stop it and thus prevent serious injury was held to at least pose a jury question. See also the railroad cases, such as Black v. New York, etc. R.R. Co., Mass., 1907, 193 Mass. 448, 79 N.E. 797, 7 L.R.A.,N.S., 148; and Fagan v. Atlantic Coast Line R.R. Co., N.Y.1917, 220 N.Y. 301, 115 N.E. 704, L.R.A.1917E, 663. In these cases the original contributory negligence of the plaintiff was regarded as a condition which as a matter of law did not contribute to the injury. It was the subsequent active negligence of the defendant which was the significant factor.

From a consideration of the facts stated, the charge given and the law cited, it is apparent that the plaintiff herein was deprived of the submission to the jury of a charge explaining and limiting contributory negligence in an extended fact situation such as the present. It is no answer to say that it was not pleaded, or otherwise specified. The real point is that the evidence fully justified the presentation to the jury of such a theory of the case and, therefore, the Court is of the opinion that a new trial must be granted.

This action is taken with some degree of reluctance because the Court always hesitates to deprive a prevailing party of its hard-won victory; however, the issue is of such substance and importance as to require this action. It may be that the jury verdict was influenced by such things as the claim of Arthur Sabo's for loss of consortium, such a claim being a treacherous one from the standpoint of a jury; or the verdict may have been influenced by the extravagant demands of the plaintiffs. This, however, is spec-

ulation which can not control the present decision.

One further comment: The trial of the case, involving as it will the inclusion of the mentioned issue, may create a problem of apportionment of damages as between the injury which would have been suffered had the plaintiff fallen a distance of nine feet as opposed to the injuries suffered as the result of a fall of twenty feet. This need not be taken up at this present writing.

For the reasons stated, the plaintiffs' motion for new trial should be granted. It is, therefore,

Ordered that the judgment heretofore entered be set aside and vacated, and that a new trial on all issues be granted.