**Nancy HUNT, Plaintiff-Appellant,**

v.

**SUN VALLEY COMPANY, INC., and Frank McMasters, Defendants-Appellees.**

**No. 75–1433.**

United States Court of Appeals, Ninth Circuit.

Sept. 19, 1977.

---

Before MERRILL and HUFSTEDLER, Circuit Judges, and BONSAL,* District Judge.

PER CURIAM:

In April, 1971, Ms. Hunt went from Los Angeles to Sun Valley, Idaho, for a week of skiing. While she was boarding Sun Valley Company's ("Sun Valley") ski lift facility in Idaho, she sustained personal injuries for which she brought this action. The accident occurred when Ms. Hunt attempted to board one of the chairs on the ski lift. To mount the ski lift, she had to place herself in a position to be aligned with the chair on the ski lift as it approached her from the rear. She testified that she did not look to the rear to observe the chair as it came toward her. She was mispositioned and, as she tried to seat herself, the center post dividing the two seats on the lift chair struck her in the back and pushed her forward causing her to fall. She suffered a serious leg fracture.

Defendant McMasters was assisting in the lift operations that day. When he saw that Ms. Hunt was not seated properly, he immediately pulled the stop cord which had the effect of stopping the lift. The lift, however, stopped after it had traversed approximately 10 to 12 feet. McMasters did not attempt to swing the ski lift chair to the right or to the left to assist Ms. Hunt to align herself with the chair, nor did he assist her as she was being shoved forward by the lift, except to pull the emergency stop cord.

Ms. Hunt predicated liability on the theories of negligence, express warranty, implied warranty, and strict liability. Sun Valley and McMasters denied her allegations and affirmatively asserted contributory negligence. The jury found against Ms. Hunt, and she appeals, claiming that the

E. Don Copple argued, of Davison, Copple & Copple, Boise, Idaho, for plaintiff-appellant.

Jack S. Gjording argued, of Elam, Burke, Jeppesen, Evans & Boyd, Boise, Idaho, for defendants-appellees.

* Honorable Dudley B. Bonsal, United States District Judge, Southern District of New York, sitting by designation.

court erred in giving and refusing certain jury instructions. We reject her contentions.

## I

Ms. Hunt's principal contention is that the court erred in refusing to instruct the jury that the ski lift is a common carrier, charged with the duty of exercising the highest degree of care for the passengers' safety and responsible for the slightest negligence. The district court, applying Idaho law in this diversity case, declined to instruct the jury that Sun Valley was "a common carrier and in its operation of its facility a common carrier has a duty to exercise the highest degree of care, skill, and diligence in receiving and conveying passengers as safely as the means of conveyance and circumstances permit. This includes the duty to take appropriate steps to aid a passenger in peril  .   .   .   . The slightest breach of this duty constitutes negligence rendering Defendant liable to Plaintiff for her injuries proximately caused by the breach."

The district court, however, gave the following jury instruction:

"It is the duty of the owner and operator of a ski lift to exercise the highest degree of care commensurate with the practical operation of such a device for the safety of any invitee using the device.

Likewise, if there is a dangerous or defective condition of the premises and such danger arises from conditions not readily apparent to the senses of an ordinary person, and if the owner of the premises had actual knowledge of such conditions, or which by the exercise of ordinary care could have been discovered by the owner, the law then imposes upon the owner the duty to give the invitee reasonable warning of such danger."

■ We accord substantial deference to a district court in its defining and applying the law of the state in which the court is sitting in diversity cases. No Idaho case has specifically addressed the question of the standard of care to be exercised by the owner and operator of a ski lift in favor of a skier using the lift. The district court's instruction imposing a duty upon the owner and operator of the lift to exercise "the · highest degree of care commensurate with the practical operation of such a device" was as favorable as any instruction which has been approved by any state, and more generous than that used in many states. (*E. g., Pessl v. Bridger Bowl*, 164 Mont. 389, 524 P.2d 1101 (1974) (duty of reasonable and ordinary care); *Sabo v. Breckenridge Lands, Inc.*, 255 F.Supp. 602 (D.Colo.1966) (ordinary care); *Summit County Development Corp. v. Bagnoli*, 166 Colo. 27, 441 P.2d 658 (1968) (the highest degree of care); *Fisher v. Mt. Mansfield Co., Inc.*, 283 F.2d 533 (2d Cir. 1960) (deference to district court's applying Vermont law using highest degree of care standard).)

■ Ms. Hunt contends that the instruction was erroneous because the district court did not tell the jury that the ski lift operator was a common carrier, and it did not state that the ski lift operator was liable for "the slightest negligence." The term "common carrier" would not have meant anything to the jury, and the absence of such term in the instruction is irrelevant. (*Summit County Development Corp. v. Bagnoli, supra*, 441 P.2d at 664–65.) Moreover, we have no reason to believe that Idaho would deem a ski lift a common carrier, but, even if it did, Idaho law applicable to common carriers does not include the "slightest negligence" formulation advanced by Ms. Hunt. (*Clark v. Tarr*, 75 Idaho 251, 270 P.2d 1016 (1954).)

## II

■ There was no error in the court's refusal to give an instruction offered by Ms. Hunt based upon the doctrine of rescue contained in Restatement of Torts (2d) § 322 because the doctrine is inapplicable to this case. Her effort is unavailing to separate into two distinct acts or events her being struck by the chair and her subsequent fall. If there were any negligence on the part of the ski lift operator, the negligence occurred in connection with her being

struck by the chair, not in any failure to rescue her as she fell. As the Restatement points out: "The rule is not an extension of the principle of 'legal cause' nor an extension of the doctrine of 'last clear chance.'" (§ 322, *Comment e.*)[1]

## III

■ The district court properly refused to instruct the jury on strict liability. No authority exists for imposing strict liability on ski lift operators for injuries occurring in the operation of a nondefective lift, and we decline to supply any. Even if the ski lift were a common carrier, Ms. Hunt is unaided because Idaho does not impose strict liability on common carriers. (*Ness v. West Coast Airlines, Inc.*, 90 Idaho 111, 410 P.2d 965 (1965).)

■ Strict liability cannot be more successfully invoked in the form of an express or implied warranty theory. Under Idaho law, a breach of a carrier's duty to supply safe carriage is limited to claims sounding in tort for negligence rather than in breach of warranty, sounding in contract. (*Ness v. West Coast Airlines, Inc., supra*, 90 Idaho 111, 410 P.2d 965; *Straley v. Idaho Nuclear Corp.*, 94 Idaho 917, 500 P.2d 218 (1972).)·

## IV

■ In a final effort to avoid the impact of contributory negligence, Ms. Hunt contends that Idaho's comparative negligence statute should have been applied. The Idaho legislature enacted its comparative negligence statute about three weeks before the accident occurred. However, the statute did not take effect until July 1, 1971, several months after this accident. Idaho has not applied the statute retrospectively. (Idaho Code § 67–510; *Edwards v. Walker*, 95 Idaho 289, 507 P.2d 486 (1973).)

The remaining contentions do not have sufficient merit to require discussion.

AFFIRMED.

---

1. *Sabo v. Breckenridge Lands Inc., supra*, 255 F.Supp. 602, upon which Ms. Hunt relies, is a very different situation. There, due to the claimed negligence of the lift operator, the plaintiff failed to become properly seated on the lift chair and was carried dangling from the chair for some distance. The evidence was conflicting about subsequent events. According to the plaintiff's evidence, the lift operator was inattentive and did not stop the lift until she had been carried some 275 feet and was 20 feet from the ground. She ultimately fell from the chair and sustained serious personal injuries. The defendant's version was that the lift was stopped almost immediately, at a point where plaintiff was only nine feet from the ground. Defendant testified that following instructions from plaintiff's husband, he moved the lift to the next tower to permit the husband to remove her by using the tower. The court held that the district court had erred in failing to give instructions to the jury limiting her contributory negligence to her activities prior to the stopping of the lift and in failing to state the substance of the rescue doctrine enunciated in section 322. As the court explained, the rescue rule is applicable "where the plaintiff's original negligence, if any, is found in a distinct set of facts which are remote from her subsequent injury." (255 F.Supp. at 606.)